IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Case No.: 24-CR-172-02 |
| v. | : | 18 U.S.C. § 1752(a)(2) |
| DOMINIC JAKUBOWSKI, | : | |
| Defendant. | : | |

### STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, Dominic Jakubowski, with the concurrence of the defendant's attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

*The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public. The grounds around the Capitol were posted and cordoned off, and the entire area as well as the Capitol building itself were restricted as that term is used in Title 18, United States Code, Section 1752 due to the fact that the Vice President and the immediate family of the Vice President, among others, would be visiting the Capitol complex that day.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. Officers with the D.C. Metropolitan Police Department were called to assist officers of the USCP who were then engaged in the performance of their official duties. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after

2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $2.9 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *The Defendant's Participation in the January 6, 2021, Capitol Riot*

8. Jakubowski and co-defendant Edward Amyot traveled from their homes in Michigan to Washington, D.C., to attend the "Stop the Steal" rally and election-related events occurring in Washington, D.C., on January 6, 2021.

9. On January 6, 2021, after attending the rally together, Amyot and Jakubowski walked to the U.S. Capitol, where a large crowd had gathered to protest Congress's certification of the Electoral College votes for the 2020 Presidential Election. Jakubowski knew that Vice President Pence would be at the Capitol that day. Jakubowski wore a dark jacket, blue jeans, a

green-colored backpack, dark sunglasses, a green-colored baseball hat, green gloves, and a black-and-white skeleton mask.

10. At or around 12:55 p.m., Amyot and Jakubowski approached the Capitol's west front in the area of First Street near Garfield Circle and the Ulysses S. Grant Memorial, where they encountered metal stairs that led onto the Capitol's West Lawn. Shortly thereafter, Amyot and Jakubowski bypassed the stairs and entered the West Lawn. As they entered, Amyot and Jakubowski passed metal barriers, snow fencing, and "Area Closed" signs.

11. By approximately 1:05 p.m., Amyot and Jakubowski crossed the West Lawn towards the Capitol's West Plaza. Once Amyot and Jakubowski reached the West Plaza, they joined a growing crowd of rioters facing a line of police officers attempting to keep the crowd from progressing closer to the Capitol building. At this police line, members of the crowd made repeated attempts to breach the line and assault officers.

12. At approximately 1:40 p.m., as police continued to hold back rioters on the West Plaza, the crowd moved a large "TRUMP" sign with a metal frame toward the police line. Amyot and Jakubowski used their hands to help other rioters direct the sign into the police line. After helping pass the sign forward, Amyot and Jakubowski pushed on the backs of rioters in front of them in an effort to help the crowd break through the police line. Officers attempting to reconstitute their line deployed pepper spray against the rioters, including Amyot and Jakubowski.

13. Jakubowski engaged in the above-described conduct at the U.S. Capitol in order to disrupt the orderly conduct of Congress's work that day, as well as the police's protection of the Capitol, both of which are the orderly conduct of Government business or official functions.

*Elements of the Offense*

14.     The parties agree that Disorderly or Disruptive Conduct in a Restricted Building or Grounds, 18 U.S.C. § 1752(a)(2), requires the following elements:

a. First, the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds.

b. Second, the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.

c. Third, the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.

*Defendant's Acknowledgments*

15.     The defendant knowingly and voluntarily admits to all the elements as set forth above. Specifically, the defendant admits that he knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions, engaged in disorderly and disruptive conduct in a restricted building or grounds, which in fact impeded or disrupted the orderly conduct of Government business or official functions.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Nathaniel K. Whitesel*
NATHANIEL K. WHITESEL
Assistant United States Attorney
DC Bar No. 1601102
601 D Street NW
Washington, DC 20530
nathaniel.whitesel@usdoj.gov
(202) 252-7759

## DEFENDANT'S ACKNOWLEDGMENT

I, Dominic Jakubowski, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 04-05-2024

_____
Dominic Jakubowski
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 4/5/24

_____
William Shipley
Attorney for Defendant